## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

### CASE NO.

WHITNEY TANNER,
individually and
on behalf of all others similarly situated,                    **CLASS ACTION**

     Plaintiff,                                       **JURY TRIAL DEMANDED**

v.

JOHN C. HEATH, ATTORNEY AT LAW, PC
 d/b/a LEXINGTON LAW, PROGREXION
MARKETING, INC., EFOLKS, LLC,

     Defendants.
_____/

### CLASS ACTION COMPLAINT

Plaintiff Whitney Tanner brings this class action against Defendants John C. Heath, Attorney at Law, PLLC, d/b/a Lexington Law Firm, ("**Lexington Law**"), Progrexion Marketing, Inc., ("**Progrexion**"), and Efolks, LLC, ("**Efolks**"), and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

### NATURE OF THE ACTION

1.  This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"), and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

1

2.    Lexington Law operates a credit repair law firm. To promote its services and solicit new clients, Lexington Law engages aggressive and intrusive telemarketing utilizing prerecorded voice calls.

3.    Lexington Law is a repeat offender of the TCPA and has been sued countless times for violating the statute. *See*, *e.g.*, *Gulden v. Heath*, No. CV-20-01906-PHX- ESW (D. Ariz. 2020); *Rosales v. Heath*, No. 8:17CV87 (D. Neb. 2019); *Anand v. Lexington Law LLC*, No. 17 C 7085, (N.D. Ill. 2018); *McDermet v. Heath*, Civil Action No. 17-12327-FDS (D. Mass. 2018); *Leslie v. John C. Heath Atty. at Law, Prof'l'l Liab. Law Co.*, No. 2:15-cv-00833-PMW (D. Utah 2016).

4.    Progrexion is a marketing company that since 2014 has engaged in primarily advertising and generating consumer leads for Lexington Law.

5.    Efolks is a subsidiary of Progrexion, which operates an outbound call center.

6.    Lexington Law and Progrexion were recently sued by Bureau of Consumer Financial Protection based on their use of a "network of marketing affiliates who advertise a variety of products and services, often related to consumer credit products….Progrexion's marketing affiliates have used deceptive, bait advertising to generate referrals to Lexington Law's credit repair service." *Bureau of Consumer Fin. Prot.*, Case No. 2:19-cv-00298-BSJ, Compl., [DE 1], at ¶3 (D. Utah 2019).

7.    Undeterred by the lawsuits filed against them, Defendants continue to engage in unsolicited robocalls and consumer complaints regarding Defendants' harassment are endless, including the following examples:

- Last week I started receiving spam via text, phone calls, and email from Lexington Law, which from what I gather is some kind of credit repair company…. My credit is great, I've never had bad credit, or signed up with Lexington Law or anything and the email account that is getting this spam is one that I am always very cautious with so it rarely gets any spam. Until now, that is.[1]

- Robot call say Lexington Law helps with credit I don't know how they got my phone number.[2]

- I filled out the little pop up windows here to get a call from Lexington Law. Come to find out, they only help people settle and I can't settle with anyone. Now they won't stop calling me and bothering me. I'm disabled and can't afford Caller ID. I hate the phone ringing all the time. How do I make them stop?[3]

- I Have ask Lexington Law to stop calling Everyday i havent hired them to do anything now they have a false case number. I would like them to lose thier license for using illegal Aggressive Attempts and Endless calls.[4]

- I was looking at a website about Rent to Own homes. They asked for some basic info, which I typed in. Then I was informed they wanted to check my credit score and I head the small print that said that if you enter your number, they have the right to call you even if you belong to one of those unwanted call lists. I backed out instead of clicking 'enter' or 'next' but they got what they wanted and woke me with a text early Sunday morning.

---

[1] www.reddit.com/r/personalfinance/comments/9yu0s3/sudden_onslaught_of_spam_from_credit_repair/

[2] www.shouldianswer.com/phone-number/8553827113

[3] www.creditinfocenter.com/community/topic/317695-how-to-stop-lexington-law-from-calling-me/

[4] https://800notes.com/Phone,aspx/1-800-292-1512/6

Ugh. Now I suppose the calls will begin. The number that shows who the text is from says 48280. She told me to call 855-255-3509. I will try typing STOP as instructed.[5]

- they keep calling my work even after I told them I did not fill out there form.[6]

- STOP calling me Credit Counciling Service from # 800-292-1512 .. or I will report you to The Better Business Bureau,                    FBI                    !!!
I tried calling this # 800-422-4895 to STOP the calls and just kept me on hold for half a effin hour! I don't have time for this crap... Somebody PLEASE DO SOMETHING!!![7]

- I just received a call from Lexington Law Firm. The number they called from 855-552-6824. The gentlemen claimed that I owed a payday loan and had very detail information concerning my property. I am concerned that they had my address and stated they would be coming to my residence to pick up my vehicles 4:30 p.m. I am going to make a police report concerning this situation and take protective measures. Please do not pay these thugs anything.[8]

8.    Through this action, Plaintiff seeks injunctive relief to halt Defendants'

unlawful conduct which has resulted in the invasion of privacy, harassment,

aggravation, and disruption of the daily life of thousands of individuals.  Plaintiff also

---

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8]    www.consumer.ftc.gov/blog/2017/08/phantom-debt-collectors-impersonate-law-firms?page=2

seeks statutory damages on behalf of herself and members of the class, and any other available legal or equitable remedies.

## **PARTIES**

9.    Plaintiff is, and at all times relevant hereto was, a citizen and resident of Clay County, Florida.

10.    Plaintiff is, and at all times relevant hereto was, an individual and a "called party" as defined by Fla. Stat. § 501.059(1)(a) in that Plaintiff was the regular user of cellular telephone number that received Defendants' telephonic sales calls.

11.    Defendant Lexington Law is a Utah professional limited liability company whose principal office is located at 360 North Cutler Drive, Salt Lake City, Utah 84054.

12.    Defendant Progrexion is a Utah professional limited liability company whose principal office is located at 257 E. 200 S. SUITE 1200 SALT LAKE CITY, UT 84111.

13.    Defendant Efolks is a Utah professional limited liability company whose principal office is located at 257 E 200 S STE 1200 SALT LAKE CITY, UT 84111.

14.    Defendants are, and at all times relevant hereto were, telephone solicitors as defined by Fla. Stat. § 501.059(f).

## **JURISDICTION AND VENUE**

15.    This Court has federal question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331.

16.    This Court has supplemental jurisdiction over Plaintiff's FTSA claims pursuant to 28 U.S.C. § 1367.

17.    Defendants are subject to personal jurisdiction in Florida because this suit arises out of and relates to Defendants' contacts with this state.  Defendants initiated and directed telemarketing and/or advertising messages into Florida. Specifically, Defendants initiated and directed the transmission of unsolicited advertisement or telemarketing messages to Plaintiff's cellular telephone number to sell goods, services or products in Florida.  Plaintiff's telephone number has an area code that specifically coincides with locations in Florida, and Plaintiff received such messages while residing in and physically present in Florida.

18.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction, and because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTS RELATED TO DEFENDANTS

19.    Lexington Law is a law firm that purports to assist consumers with negative credit reporting issues. It charges consumers a monthly fee in exchange for sending demand letters to creditors disputing credit reporting items.

20.    Progrexion is a marketing and lead generation company whose only client is Lexington Law.

21.    Progrexion owns the Lexington Law trademark and the website domain www.lexingtonlaw.com, and licenses both to Lexington Law.

6

22.     Progrexion and Lexington Law share the same in-house counsel.

23.     Efolks is a subsidiary of Progrexion, and operates a call center utilized to market and generate leads for Lexington Law.

24.     In approximately 2014, Lexington Law and Progrexion entered into a contractual relationship pursuant to which Progrexion was tasked with advertising and generating consumer leads on behalf of Lexington Law.

25.     Pursuant to their contract, Progrexion has the right to periodically audit Lexington Law's offices and records.

26.     Under the terms of their contract, Progrexion and Lexington Law have indicated that they share an interest in the success of their respective operations.

27.     Progrexion markets Lexington Law's services through a network of affiliates and various channels, including through websites.

28.     Lexington Law and Progrexion share in the revenue generated by each consumer lead that signs up for Lexington Law's services.

29.     Lexington Law controls and has final decision-making power over the scope of telemarketing campaigns conducted by Progrexion through Efolks.

30.     Lexington Law controls and has final decision-making power over the content of telemarketing campaigns conducted by Progrexion through Efolks, including the content of the prerecorded messages sent to Plaintiff and the putative class members.

31.     Lexington Law has the ability and right to make any changes it wishes to the telemarketing campaigns conducted by Progrexion through Efolks, including the

7

content of the prerecorded messages sent to Plaintiff and the putative class members. Lexington Law has the ability and right to start and stop the telemarketing campaigns conducted by Progrexion through Efolks.

32.    Lexington Law has the ability and right to give interim instructions regarding the telemarketing campaigns conducted by Progrexion through Efolks.

33.    Lexington Law provides Progrexion and Efolks with access to information and systems that normally would be within the Lexington Law's exclusive control, including access to detailed information regarding the nature and pricing of Lexington Law's services, as well as to Lexington Law's customer information.

34.    Lexington Law authorized Progrexion and Efolks to use Lexington Law's trade name, trademark, and/or service mark when advertising and promoting Lexington Law's services.

35.    Lexington Law reviewed and approved the scripts for the prerecorded messages sent to Plaintiff and the putative class members.

36.    Lexington Law has and continues to knowingly accept the benefits of the telemarketing activities conducted by Progrexion and Efolks, and has generated considerable profits directly as a result of the telemarketing activities performed by Progrexion and Efolks on its behalf.

37.    Efolks was appointed by Progrexion to perform marketing and lead generation functions that Progrexion consented to perform on behalf of Lexington Law.

38.    Lexington Law consented to the appointment of Efolks to place outbound solicitation calls to Plaintiff and the putative class members.

39.    Progrexion has control and decision-making power over the scope of telemarketing campaigns conducted by Efolks.

40.    Progrexion has the ability and right to give interim instructions regarding the telemarketing campaigns conducted by Efolks.

41.    Progrexion provided Efolks with access to information and systems that normally would be within the Progrexion's exclusive control, including access to detailed information regarding the nature and pricing of Progrexion's services, as well as to customer information.

42.    Efolks regularly provides information to Progrexion that normally would be within the Efolks's exclusive control, including access to detailed outbound calling records.

43.    Progrexion authorized Efolks to use Lexington Law's trade name, trademark, and/or service mark when advertising and promoting Lexington Law's services.

44.    Progrexion reviewed and approved the scripts for the prerecorded messages sent to Plaintiff and the putative class members.

45.    Progrexion has and continues to knowingly accept the benefits of the telemarketing activities conducted by Efolks, and has generated considerable profits directly as a result of the telemarketing activities performed by Efolks on its behalf.

## FACTS RELATED TO PLAINTIFF

46.     On at least May 31, 2022 and June 2, 2022, Defendants sent prerecorded voice calls to Plaintiff's cellular telephone number with the following message:

> "Hi this is Lexington Law Firm. Recently you requested a free credit consultation, and I was calling to follow up. Lexington law has helped hundreds of thousands of people work to repair their credit and we would like to see if we can help you too. Call us back at 602-474-2454. That's 602-474-2454. You can also opt-out from receiving these offers by calling 800-422-4895."

47.     As demonstrated by the above message, the purpose of Defendants' telephonic sales call was to solicit the sale of consumer goods and/or services.

48.     Had Plaintiff called the number identified in the message (602-474-2454) she would have been connected with an employee of Progrexion, at which point Progrexion's employee would have attempted to sell Plaintiff one of Lexington Law's credit repair monthly fee memberships.

49.     Had Plaintiff answered the calls, she would have been transferred to an employee of Progrexion, at which point Progrexion's employee would have attempted to sell Plaintiff one of Lexington Law's credit repair monthly fee memberships.

50.     Had Plaintiff signed up for Lexington Law's services, she would have then been transferred by the Progrexion employee to an employee of Lexington Law.

51.     Plaintiff is the regular user of the telephone number that received the above telephonic sales calls.

52.     Plaintiff utilizes this cellular telephone number for personal purposes and the number is Plaintiff's residential telephone line.

53.     Plaintiff registered her telephone number on the National Do-Not-Call Registry over 30 days prior to Defendants' first robocall.

54.     Plaintiff was in Florida when Plaintiff received Defendants' robocalls, and Defendants' violative conduct occurred in substantial part in Florida.

55.     Defendants maintain and/or have access to outbound transmission reports for all robocalls sent advertising/promoting Lexington Law's services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members.

56.     To send the messages, Defendants used a messaging platform (the "Platform"), which permitted Defendant to transmit blasts of prerecorded messages.

57.     Defendants were not required to and did not need to utilize the Platform to send their robocalls to Plaintiff and the Class members. Instead, Defendants opted to use the Platform to maximize the reach of its message advertisements at a nominal cost to Defendants.

58.     Defendants would be able to conduct their business operations without sending robocalls to consumers.

59.     Defendants would be able to send robocalls to consumers, and in compliance with the FTSA, by securing the proper consent from consumers prior to sending messages.

60.     Defendants would be able to place regular to consumers without consent by utilizing calls with live operators instead of robocalls.

61.    Accordingly, it is not impossible for Defendants to comply with the FTSA in the context of calling consumer leads.

62.    The burden and cost to Defendants of securing consent from consumers that complies with the FTSA is nominal.

63.    Compliance with the FTSA will not result in Defendants having to cease their business operations.

64.    Compliance with the FTSA will not result in Defendants having to alter the prices of any goods or services they provide in the marketplace.

65.    Compliance with the FTSA will not force Defendants to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

66.    Because a substantial part of Defendants' FTSA violations occurred in Florida, requiring Defendants' compliance with the FTSA will not have the practical effect of regulating commerce occurring wholly outside of Florida.

67.    Plaintiff never provided Defendants with express written consent authorizing Defendants to transmit prerecorded sales or marketing calls to Plaintiff's cellular telephone number.

68.    More specifically, Plaintiff never signed any type of authorization permitting or allowing the placement of prerecorded sales or marketing calls.

69.    Since July 1, 2021, on information and belief, Defendants sent at least 50 robocalls to as many consumers in Florida.

70.     Defendants' robocalls caused Plaintiff and the Class members harm, including statutory damages, inconvenience, invasion of privacy, aggravation, annoyance, and violation of their statutory privacy rights under the TCPA and FTSA.

## CLASS ALLEGATIONS

### PROPOSED CLASSES

71.     Plaintiff brings this lawsuit as a class action on behalf of Plaintiff individually and on behalf of all other similarly situated persons as a class action pursuant to Federal Rule of Civil Procedure 23. The Classes that Plaintiff seeks to represent are defined as:

> **DNC Class**: All persons in the United States who from four years prior to the filing of this action through the date of class certification (1) Defendants, or anyone on Defendants' behalf, (2) placed more than one message call within any 12-month period; (3) where the person's telephone number that had been listed on the National Do Not Call Registry for at least thirty days; (4) regarding Defendant Lexington Law's property, goods, and/or services; (5) who did not purchase or transact business with Defendants during the eighteen months immediately preceding the date of the first message; and (6) who did not contact Defendants during the three months immediately preceding the date of the first message with an inquiry about a product, good, or service offered by Defendants.

> **TCPA Class**: All persons within the United States who, within the four years prior to the filing of this Complaint, received more than one prerecorded voice call on their telephone from Defendants or anyone on Defendants' behalf, regarding Defendant Lexington Law's property, goods, and/or services.

> **FTSA Class**: All persons in Florida who, within the four years prior to the filing of this Complaint, received more

**than one prerecorded voice call on their telephone from Defendants or anyone on Defendants' behalf, regarding Defendant Lexington Law's property, goods, and/or services.**

72.    Defendants and their employees or agents are excluded from the Classes.

## NUMEROSITY

73.    Upon information and belief, Defendants placed telephonic sales calls to telephone numbers belonging to at least 50 persons. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

74.    The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendants' call records.

## COMMON QUESTIONS OF LAW AND FACT

75.    There are numerous questions of law and fact common to the Classes which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the Class are:

(a) Whether Defendants initiated telephonic sales calls to Plaintiff and the Class members;

(b) Whether Defendants can meet its burden of showing that they had prior express written consent to make such calls;

(c) Whether Defendants maintain an internal do-not-call list and instruct their employees on how to use the list; and

(d) Whether Defendants are liable for damages, and the amount of such damages.

76.    The common questions in this case are capable of having common answers.  Plaintiff and the Class members have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

77.    Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

78.    Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### SUPERIORITY

79.    A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendants' wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is

remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

80.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

### COUNT I
### Violations of 47 U.S.C. § 227(c) and 64.1200(c)
### (On Behalf of Plaintiff and the DNC Class)

81.     Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 80 as if fully set forth herein.

82.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides in pertinent part that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

83.     Per 47 C.F.R. § 64.1200(e), § 64.1200(c) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

84.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations

16

prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

85.    Defendants violated 47 C.F.R. § 64.1200(c) by initiating telephone solicitations to telephone subscribers such as Plaintiff and the DNC Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

86.    Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and DNC Class members received more than one message in a 12-month period from Defendants in violation of 47 C.F.R. § 64.1200.

87.    As a result of Defendants' conduct as alleged herein, Plaintiff and the DNC Class members suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

**COUNT II**
**VIOLATION OF FLA. STAT. § 501.059**
**(On Behalf of Plaintiff and the FTSA Class)**

88.    Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 80 as if fully set forth herein.

89.    It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection

is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

90.    A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

91.    "Prior express written consent" means an agreement in writing that:

1.  Bears the signature of the called party;

2.  Clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

3.  Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

4.  Includes a clear and conspicuous disclosure informing the called party that:

    a.  By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and

b. He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services. Fla. Stat. § 501.059(1)(g).

92.    Defendants failed to secure prior express written consent from Plaintiff and the Class members.

93.    In violation of the FTSA, Defendants made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

94.    Defendants made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing recorded messages.

95.    As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation.  Plaintiff and the Class members are also entitled to an injunction against future calls. *Id*.

96.    Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

**COUNT III**
**Injunctive Relief Pursuant to Fla. Stat. § 501.059(10)(a)**
**(On Behalf of Plaintiff and the FTSA Class)**

97.    Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 80 as if fully set forth herein.

98.    Pursuant to section 501.059(10)(a), Plaintiff seeks injunctive relief prohibiting Defendants' unlawful conduct in the future to protect Plaintiff and the FTSA Class members from Defendants' unsolicited calls and practices.

99.    Defendants' ongoing and continuing violations have caused, and in the absence of an injunction will continue to cause, harm to Plaintiff and the FTSA Class members.

100.    Plaintiff and the FTSA Class members suffer irreparable harm if Defendants are permitted to continue its practice of violating the FTSA.

101.    The injuries that the Plaintiff and the FTSA Class members will suffer if Defendants are not prohibited from continuing to engage in the unlawful practices described herein far outweigh the harm that Defendants will suffer if it is enjoined from continuing this conduct.

102.    The public interest will be served by an injunction prohibiting Defendants from continuing to engage in the unlawful practices described herein.

103.    Accordingly, Plaintiff and the FTSA Class members seek an injunction requiring Defendants to implement policies and procedures to secure express written consent before engaging in any message solicitations, and to follow such consent requirements.

104.    Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

**COUNT IV**
**Violation of 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiff and the TCPA Class)**

105.   Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 80 as if fully set forth herein.

106.   It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any …artificial or prerecorded voice to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

107.   It is a violation of the TCPA regulations promulgated by the FCC to "initiate any telephone call…using an… artificial or prerecorded voice to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call."  47 C.F.R. § 64.1200(a)(1)(iii).

108.   It is a violation of the TCPA regulations promulgated by the FCC to "initiate any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party". 47 C.F.R. § 64.1200(a)(3).

109.   It is a violation of the TCPA to "initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party…." 47 U.S.C. § 227(b)(1)(B).

110.   Additionally, it is a violation of the TCPA regulations promulgated by the FCC to "[i]nitiate, or cause to be initiated, any telephone call that includes or

introduces an advertisement or constitutes telemarketing, …artificial or prerecorded voice …other than a call made with the prior express written consent of the called party or the prior express consent of the called party when the call is made…" 47 C.F.R. § 64.1200(a)(2).

111.    Defendants used prerecorded messages to make non-emergency telephone calls to the telephones of Plaintiff and other members of the Class.

112.    Defendants did not have prior express written consent to call the telephones of Plaintiff and the other members of the putative Class when their calls were made and/or failed to honor opt-out requests regarding its prerecorded solicitations.

113.    Defendants have, therefore, violated §§ 227(b) and §§ 64.1200(a) by using prerecorded messages to make non-emergency telephone calls to the telephones of Plaintiff and the other members of the putative Class without their consent.

114.    As a result of Defendant's conduct and pursuant to § 227(b) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the members of the Class are also entitled to an injunction against future calls. *Id*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

b) An award of statutory damages for Plaintiff and each member of the Classes as applicable under the FTSA and/or TCPA;

c) An order declaring that Defendant's actions, as set out above, violate the FTSA and TCPA;

d) An injunction requiring Defendant to cease all telephonic sales calls made without express written consent, and to otherwise protect the interests of the Class;

e) An injunction requiring Defendant to comply with 47 C.F.R. § 64.1200(d) by (1) maintaining the required written policies; (2) providing training to their personnel engaged in telemarketing; and (3) maintaining a do-not-call list

f) Such further and other relief as the Court deems necessary.

## **JURY DEMAND**

Plaintiff, individually and on behalf of the Class, hereby demand a trial by jury.

## **DOCUMENT PRESERVATION DEMAND**

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with the communications or transmittal of the calls as alleged herein.

DATED: August 8, 2022

                                          Respectfully submitted,

                                          **HIRALDO P.A.**

                                          */s/ Manuel S. Hiraldo*
                                          Manuel S. Hiraldo, Esq.*
                                          Florida Bar No. 030380
                                          401 E. Las Olas Boulevard
                                          Suite 1400
                                          Ft. Lauderdale, Florida 33301
                                          Email: mhiraldo@hiraldolaw.com
                                          Telephone: 954.400.4713
                                          **\*Lead Counsel for Plaintiff**

                                          **DAPEER LAW, P.A.**
                                          Rachel Dapeer
                                          Florida Bar No. 108039
                                          20900 NE 30th Ave., Suite 417
                                          Aventura, FL 33180
                                          T: 305-610-5223
                                          *rachel@dapeer.com*